**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD GOODE,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:04-0993** |
| v. | : | **(CONNER, D.J.)** |
| | : | **(MANNION, M.J.)** |
| **JOHN NASH, Warden, CAPTAIN BEBOW, LT. KOVACH, and LT. CHMELY[1],** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

Before the court is the defendants' unopposed motion to dismiss and for summary judgment, (Doc. No. 23).

### I.   PROCEDURAL HISTORY

On May 5, 2004, the plaintiff, an inmate at the Federal Correctional Institution at Schuylkill, ("FCI-Schuylkill"), Minersville, Pennsylvania, filed the instant Bivens[2] action pursuant to 28 U.S.C. §1331.  (Doc. No. 1).  On May 21, 2004, the plaintiff filed the appropriate filing fee.  (Doc. No. 6).

By order dated May 28, 2004, it was directed that the Clerk of Court prepare the summons and send it to the plaintiff for service.  (Doc. No. 7). After the court's resolution of issues with respect to service of the complaint,

---

[1]Incorrectly named by the plaintiff as "Lt. Chemely."

[2]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

(Doc. Nos. 10-14, 17, 22, 24), on July 11, 2005, the defendants filed the instant motion to dismiss and for summary judgment. (Doc. No. 23). The defendants filed a brief in support of their motion, (Doc. No. 25), as well as a statement of material facts, (Doc. No. 26), on July 22, 2005. As of the date of this report, the plaintiff has failed to file a brief in opposition to the defendants' motion. Pursuant to L.R. 7.6 the motion is deemed unopposed. The court will, however, give the motion a merits review in accordance with Stackhouse v. Mazurkiewicz, 951 F.2d 29 (3d Cir. 1991).

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

Defendants' motion is brought, in part, pursuant to provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can granted. Dismissal should only occur where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Accordingly, dismissal is appropriate "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Trump Hotel and Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998)(citing ALA, Inc. v. CCair, Inc., 29 F.3d

855, 859 (3d Cir. 1994)).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

It must also be remembered that when considering a motion to dismiss under Rule 12(b)(6), the important inquiry is not whether the plaintiff will ultimately prevail on the merits of his claim, but only whether he is entitled to offer evidence in support of them. Scheuer v. Rhodes, 416 U.S. 233, 236 (1974).

### B. Motion for Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

> to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence or make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving

party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

## III.   DISCUSSION

In his complaint, the plaintiff alleges that on March 31, 2004, he was placed in the lock up at FCI-Schuylkill for an altercation which he was neither involved in nor had any knowledge of. Afterwards, he alleges that he was taken to the hospital and checked for any signs that he was involved in a conflict. The plaintiff alleges that none were found and he was returned to lock up.

Seven days later, the plaintiff alleges that he was interviewed by the prison investigation unit and was informed that they knew that he had nothing to do with the altercation, but wanted to know if he had any knowledge with respect to the incident. The plaintiff informed him that he did not and was placed back in lock up pending further investigation.

The plaintiff alleges that he was continually harassed with respect to the incident, including having a member of the Federal Bureau of Investigations come to interview him with respect to the incident.

Although he alleges that he was in no way involved in the incident and did not have any knowledge with respect to the incident, the plaintiff alleges

that he was illegally detained in lock up for a period of thirty-three (33) days. During this time, the plaintiff alleges that he was "subjected to the poor conditions and cruelty." To this extent, the plaintiff alleges that he was "subjected to drinking dark brown water that [came] out of the sink, dirty underwear that they [gave] to [inmates confined in lock up] that other inmates weared (sic), poor food, no air in the rooms, dirty trays, flooded showers, poor commissary, disrespectful officers working . . . on lock up, [he] [could not] speak to his sick grandmother or [his] kids, but only once a month, the rooms [were] dirty - and [he] [was] only allowed to clean the rooms once a week, [he] [was] being denied to practice [his] religous (sic) rights and [he] [was] not able to study [his] criminal case - because there [was] no adequate library [in lock up]." He further alleges that three (3) inmates were confined in each room in lock up, as opposed to the required two (2) inmates. In addition, he alleges that he was only permitted to take three (3) showers per week, he was not allowed enough recreation, and hair cuts were given only once per month.

Based upon the above allegations, the plaintiff is seeking to be released from lock up and placed back in the general population[3]; transferred out of FCI-Schuylkill to a facility closer to home, so that he can see his family; and $4 million in compensatory damages.

---

[3] Since the filing of the instant action, the plaintiff has been released from lock up back into the general population. (Doc. No. 26).

In an attempt to pierce these allegations and establish that no genuine issue of fact exists for trial, the defendants have provided a statement of material facts supported by various exhibits, which indicates that on March 31, 2004, Special Investigative Supervisor, ("SIS"), Hussion was informed that staff received confidential information that an inmate had been assaulted in Unit 4B. (Doc. No. 26, ¶ 1; Ex. 1, ¶2). The alleged victim was located, taken to the Health Services Unit, ("HSU"), for a medical examination, and received minor first aid. (Doc. No. 26, ¶2; Ex. 1, ¶3). The alleged victim was then placed in the Special Housing Unit, ("SHU"), in administrative detention and SIS Hussion began an investigation into the assault. (Doc. No. 26, ¶3; Ex. 1, ¶4).

Based upon information received, SIS Hussion made a decision to place the plaintiff and two (2) other inmates in the SHU in administrative detention pending further investigation into the assault. (Doc. No. 26, ¶4; Ex. 1, ¶5). All three (3) of the inmates were examined by medical staff in order to determine if they had sustained any injuries consistent with being in an altercation. (Doc. No. 26, ¶5; Ex. 1, ¶6). The examination of the plaintiff revealed no visible signs of injury. (Id.).

SIS Hussion is authorized to place inmates in the SHU in an administrative detention status for various reasons, including pending investigation of a violation of Bureau of Prisons', ("BOP"), Regulations or investigation into a criminal act. (Doc. No. 26, ¶7; Ex. 1, ¶7; Ex. 2).

7

According to the defendants' exhibits, none of the named defendants were involved in the decision to place the plaintiff in the SHU. (Doc. No. 26, ¶8; Exs. 3-6, ¶2). In fact, defendant Chmely was not at work on March 31, 2004, the date on which the plaintiff was placed in the SHU. (Doc. No. 26, ¶¶9-10; Ex. 3, ¶3). In any event, defendant Chmely was not assigned to work in the SHU or the SIS Office at that time, and his duties were limited to performing duties as the Operations Lieutenant or the Activities Lieutenant for the main institution. (Doc. No. 26, ¶11; Ex. 3, ¶4).

Defendant Kovach was assigned to work as the SHU Lieutenant on March 31, 2004, and, as such, was responsible for the overall operation of the SHU, but was not involved in the decision to place the plaintiff into the SHU. (Doc. No. 26, ¶12; Ex. 4, ¶3).

As part of the investigation into the assault, the defendants' materials provide that several inmates and staff members were interviewed, inmate records reviewed, and a review of video surveillance tapes was conducted. (Doc. No. 26, ¶13; Ex. 1, ¶8). The plaintiff was interviewed on April 12, 2004, and was uncooperative during the interview. The plaintiff stated that he had nothing to do with the assault and that it was a one-on-one assault. (Doc. O. 26, ¶14; Ex. 1, ¶9).

On April 25, 2004, after the plaintiff's placement in the SHU, defendant Kovach was assigned to work as the SIS Lieutenant on normal work assignment rotations. (Doc. No. 26, ¶15; Ex. 4, ¶7).

On April 27, 2004, again, after the plaintiff was placed in the SHU, defendant Chmely was assigned to work as the SHU Lieutenant on normal work assignment rotations.  (Doc. No. 26, ¶16; Ex. 3, ¶5).

On May 4, 2004, the investigation into the assault concluded.  (Doc. No. 26, ¶ 17; Ex. 1, ¶ 10).  The defendants' materials provide that, although the investigation determined that an inmate had assaulted another inmate in Unit 4B, there was no evidence that the plaintiff was involved in the assault.  (Doc. No. 26, ¶ 18; Ex. 1, ¶ 10).  As a result, a recommendation was made to release the plaintiff from the SHU back into the general inmate population.  (Doc. No. 26, ¶ 19; Ex. 1, ¶ 10).  Defendant Bebow reviewed the recommendation and concurred.  He forwarded the recommendation to the Associate Warden's Office for further action and review.  (Doc. No. 26, ¶ 20; Ex. 5, ¶5).  Defendant Nash agreed with the recommendation and directed that the plaintiff be released from administrative detention and returned to the general population.  (Doc. No. 26, ¶ 21; Ex. 6, ¶ 7).  On the same day, the plaintiff was released to the general population.  (Doc. No. 26, ¶22; Ex. 1, ¶11; Ex. 3, ¶6).  The plaintiff was in administrative detention for approximately thirty-four (34) days.  (Doc. No. 26, ¶23; Ex. 4, ¶ 8).

The defendants' materials provide that it is the usual practice of defendants Nash and Bebow to conduct tours throughout the institution on a regular basis, including the SHU.  (Doc. No. 26, ¶24; Ex. 5, ¶3; Ex. 6, ¶5).  Neither of these defendants recalls having any conversation with the plaintiff

with respect to his placement in administrative detention or the living conditions in the SHU. (Doc. No. 26, ¶25; Ex. 5, ¶3; Ex. 6, ¶5). If such concerns were raised to either defendant, their materials provide that they would have referred the concerns to the proper department head or the SHU Lieutenant for investigation. (Doc. No. 26, ¶26; Ex. 5, ¶3; Ex. 6, ¶5). In fact, neither defendant recalls ever having had interaction with the plaintiff. (Doc. No. 26, ¶27; Ex. 5, ¶2; Ex. 6, ¶2).

Defendant Bebow does not recall receiving any correspondence from the plaintiff regarding the allegations raised in his complaint. (Doc. No. 26, ¶27; Ex. 5, ¶6). Defendant Nash's records indicate that he received two (2) informal requests from the plaintiff, neither of which concerned the allegations raised in his complaint. (Doc. No. 26, ¶28; Ex. 6, ¶3). Further, they indicate that defendant Nash was not involved in responding to any remedies concerning the issues raised in this case. (Doc. No. 26, ¶29; Ex. 6, ¶4).

In addition, the defendants' materials indicate that SIS Hussion does not recall ever having any interaction with the plaintiff concerning complaints about the living conditions in the SHU or his placement in administrative detention, nor does he recall receiving any correspondence from the plaintiff. (Doc. No. 26, ¶30; Ex. 1, ¶12).

Defendant Kovach was assigned to work in the SHU during the time period in question, but does not recall any issues concerning the plaintiff or any complaints regarding his living conditions. (Doc. No. 26, ¶ 31; Ex. 4, ¶6).

If the plaintiff had made any such complaints, the defendants' materials provide that defendant Kovach would have investigated the complaint and made corrections as appropriate. (Doc. No. 26, ¶32; Ex. 4, ¶6).

Defendant Chmely does not recall ever having any interaction with the plaintiff concerning complaints about the living conditions in the SHU. (Doc. No. 26, ¶33; Ex. 3, ¶2). If the plaintiff had made any such complaints, the defendants' materials again provide that defendant Chmely would have investigated the complaint and made corrections as appropriate. (Doc. No. 26, ¶ 34; Ex. 3, ¶7).

According to the defendants' materials, BOP records indicate that the plaintiff has filed sixteen (16) administrative remedies since March 31, 2004, the date he alleges that he was improperly placed in the SHU. (Doc. No. 26, ¶35; Ex. 7). Ten (10) of these remedies did not pertain to the allegations which he now attempts to set forth in his complaint. (Doc. No. 26, ¶36; Ex. 7, ¶13). Three (3) of the remedies were rejected by the BOP because the plaintiff failed to comply with the procedures for filing administrative remedies. Specifically, the remedies were rejected as being untimely. (Doc. No. 26, ¶37; Ex. 7, ¶¶ 14-17). In these instances, the plaintiff was instructed to cure the defect and provide verification that he was not responsible for the untimely filing of the appeal. There is no indication from the record that the plaintiff has done so. (Id.). The remaining three (3) remedies pertain to the plaintiff's claim that he was improperly confined in the SHU. (Doc. No. 26,

¶40; Ex. 7, ¶18). The defendants' materials indicate that there is no evidence that the plaintiff ever filed an administrative remedy complaining of the living conditions within the SHU, as he now attempts to do in his complaint. (Doc. No. 26, ¶41; Ex. 1, ¶ 19).

Because the plaintiff has failed to oppose the defendants' materials, the above facts may be taken as true. Anchorage Associates v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). There only remains then the question of whether the defendants are entitled to judgment as a matter of law on these facts.

In light of the above facts, the defendants initially argue that any claims relating to the conditions of the plaintiff's confinement while in the SHU are barred by the plaintiff's failure to exhaust administrative remedies. (Doc. No. 26, pp. 8-11).

The Prison Litigation Reform Act, ("PLRA"), requires prisoners to exhaust administrative remedies before initiating a lawsuit pursuant to 42 U.S.C. §1983. To this extent, the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Prison conditions" include ". . . the effects of actions by government

officials on the lives of persons confined in prison . . ." 18 U.S.C. §3626(g). Civil actions under this provision relate to "the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." McCray v. Williams, 357 F.Supp.2d 774, 779 (D.Del. 2005)(citing Booth v. Churner, 206 F.3d 289, 291 (3rd Cir. 2000)).

Regardless of the relief requested, compliance with the exhaustion of administrative remedies requirement is mandatory. See Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). Moreover, the Third Circuit has recognized that there is no futility exception to the exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002)(citing Nyhuis, 204 F.3d at 78). A prisoner must properly exhaust administrative remedies or risk procedural default. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).

Based upon the unopposed documentation provided by the defendants, the plaintiff has failed to exhaust his administrative remedies with respect to the claims he now attempts to raise relating to the conditions of his confinement while in the SHU.  Therefore, the defendants' motion for summary judgment should be granted on this basis.

The defendants further argue that the plaintiff's claim that he was placed in the SHU does not rise to the level of an Eighth Amendment violation.  (Doc. No. 26, pp. 11-15).

The Eighth Amendment prohibits punishment which is considered "repugnant to the conscience of mankind." Estelle v. Gamble, 429 U.S. 97,

13

102-103 (1976). In order to violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable or shockingly substandard. See Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347.

In the context of the Fourteenth Amendment, in Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment's due process clause is triggered only by those restraints which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In applying this standard, the Court noted that the placement of an inmate in disciplinary confinement did not differ significantly from placement in either administrative segregation or protective custody. Id. at 486. Given this, the Court concluded that the conditions imposed upon an inmate in disciplinary custody were not atypical or significantly different from conditions a prisoner could expect to face in the ordinary course of prison life, and as a result, did not implicate the Due Process Clause.

In Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997), the Third Circuit applied the "atypical and significant hardship" standard to an inmate being held in administrative custody. In that case, the inmate, who was accused of raping a female prison guard, was placed in administrative custody without

14

a hearing for fifteen (15) months pending an investigation. The inmate challenged his placement in administrative custody without a hearing as a violation of his due process rights. In upholding the district court's grant of summary judgment in favor of the defendants, the Third Circuit held that confinement in administrative custody for a period of fifteen months "did not deprive [the inmate] of a liberty interest and . . . he was not entitled to procedural due process protection." Griffin, 112 F.3d at 708. Other courts have echoed this sentiment. See Jones v. Baker, 155 F.3d 810 (6th Cir. 1998)(confinement in administrative segregation for 2½ years was not "atypical and significant" hardship); Wagner v. Hanks, 128 F.3d 1173 (7th Cir. 1997)("[T]he right to litigate disciplinary confinements has become vanishingly small. This may be why, since Sandin, no court of appeals has found such a confinement to be a deprivation of liberty . . .").

In this case, the defendants' undisputed facts establish that the plaintiff was confined in administrative detention for a period of thirty-four (34) days pending an investigation into an assault on another inmate. At the conclusion of the investigation, there was no evidence to indicate that the plaintiff was involved in the assault. As a result, the plaintiff was released back into the general population. Under these facts, there is neither evidence that the plaintiff's confinement in administrative detention constituted "atypical or significant" hardship under the Fourteenth Amendment, nor is there evidence that it was the sort of confinement which would be "repugnant to the

conscience of mankind" under the Eighth Amendment. As such, the defendants' motion to dismiss and for summary judgment should be granted.

## IV. CONCLUSION

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

the defendants' unopposed motion to dismiss and for summary judgment, **(Doc. No. 23)**, be **GRANTED**.

S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** February 6, 2006
O:\shared\REPORTS\2004 Reports\04-0993.01.wpd